Anna Y. Park, CA SBN 164242
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone: (213) 894-1083
Facsimile: (213) 894-1301
lado.legal@eeoc.gov

Elizabeth A. Naccarato, NV BAR #11221
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
333 Las Vegas Boulevard South, Suite 8112
Las Vegas, Nevada 89101
Telephone: (702) 388-5072
Facsimile: (702) 388-5094

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> MATTRESS FIRM, INC.; and DOES 1-15, INCLUSIVE <br><br> Defendants. | Case No.: <br><br> **COMPLAINT—CIVIL RIGHTS** <br><br> • **Age Discrimination in Employment Act [29 U.S.C. §623(a)]** <br><br> **JURY TRIAL DEMAND** |

### NATURE OF THE ACTION

This is an action under the Age Discrimination in Employment Act of 1967 ("ADEA") to correct unlawful employment practices on the basis of age and to

-1-

provide appropriate relief to John Gillespie, Jackie Gray, Hooshang Seisan, Frank MacLean, Robert Schnair, William James and other aggrieved individuals who were adversely affected by such practices.

As alleged with greater particularity in Paragraphs 15-29 herein, Plaintiff, the United States Equal Employment Opportunity Commission ("EEOC" or the "Commission") alleges that Defendant Mattress Firm, Incorporated and Does 1 through 15 ("Defendant") engaged in unlawful discrimination when they subjected the charging parties and others to disparate treatment, discriminatory discharge and constructive discharge on the basis of age (40 years of age or older).

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 7(b) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626(b) (the "ADEA"), which incorporates by reference Sections 16(c) and 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(c) and 217.

2. The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the District of Nevada.

## PARTIES

3. Plaintiff, U.S Equal Employment Opportunity Commission (the "EEOC" or "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of the ADEA and is expressly authorized to bring this action by Section 7(b) of the ADEA, 29 U.S.C. § 626(b), as amended by Section 2 of Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and by Public Law 98-532 (1984), 98 Stat. 2705.

4. At all relevant times, Defendant Mattress Firm, Incorporated ("Mattress Firm" or "Defendant") has continuously been a Delaware Corporation

doing business in the State of Nevada, and the Cities of Las Vegas, North Las Vegas and Henderson, and has continuously had least 20 employees.

5. At all relevant times, Defendant Mattress Firm has continuously been an employer in an industry affecting commerce within the meaning of Sections 11(b), (g) and (h) of the ADEA, 29 U.S.C. § 630(b), (g) and (h).

6. Plaintiff is ignorant of the true names and capacities of Defendants sued as Does 1 through 10, inclusive (the "Doe Defendants"). Therefore, Plaintiff sues said Doe Defendants by such fictitious names. Plaintiff reserves the right to amend the complaint to name the Doe Defendants as they become known. Plaintiff alleges that each of the Defendants named as Doe Defendants was in some manner responsible for the acts and omissions alleged herein and Plaintiff will amend the complaint to allege such responsibility when Plaintiff has ascertained the identity of the Doe Defendants.

7. All of the acts and failures to act alleged herein were duly performed by and attributable to all Defendants, each acting as a successor, alter ego, joint employer, integrated enterprise, agent, employee, successor, or under the direction and control of the others, except as otherwise specifically alleged. The alleged acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved and/or ratified the other Defendants' unlawful acts and omissions alleged in this complaint. Whenever and wherever reference is made in this Complaint to any act by a Defendant, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally.

## **CONDITIONS PRECEDENT**

8. More than thirty (30) days prior to the institution of this lawsuit, John Gillespie, Jackie Gray, Hooshang Seisan, Frank McLean, Robert Schnair, and William James filed charges of discrimination with the Commission alleging that Defendants violated the ADEA on behalf of themselves and a class of other

aggrieved individuals

9. Prior to institution of this lawsuit and following an investigation into the allegations, the Commission issued Letters of Determination on each charge finding reasonable cause to believe that Defendant subjected the charging parties and other aggrieved individuals to discriminatory terms and conditions of employment and discharge or constructive discharge.

10. Prior to instituting this lawsuit, the EEOC attempted to eliminate the unlawful employment discrimination herein alleged and to effect voluntary compliance with the ADEA through informal methods of conciliation, conference and persuasion within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

11. All conditions precedent to this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. Since at least 2007, Defendant has engaged in unlawful employment discrimination in violation of Section 4(a)(1) of the ADEA, 29 U.S.C. § 623(a)(1) by subjecting Gillespie, Gray, Seisan, McLean, James, Schnair, and a class of other aggrieved individuals aged 40 or over to adverse terms and conditions of employment and constructive discharge or discharge on the basis of their age.

13. At all relevant times, the Charging Parties and other aggrieved individuals have been age forty (40) or older.

14. In or around March 2007, Defendant Mattress firm acquired the Bedtime Mattress, Inc. ("Bedtime") brand of stores in the greater Las Vegas area.

15. At the time of the acquisition, almost all of the existing staff in Defendant's Las Vegas stores was age 40 or older. Defendant set a goal of replacing approximately 90% of the existing staff with younger employees. Within five months after the acquisition, only around one-quarter of Defendant's staff in Las Vegas stores was age 40 or older.

16. During the transition, Defendant's upper management made numerous

ageist remarks to the District Manager over the Las Vegas stores about the existing staff, including that they were "very old," "stuck in their ways," "resistant to change," "not like us," and not "motivated." In addition, Defendant's upper management instructed the District Manager to induce the older employees to resign, advising him that the older workers would either "quit or have to be nudged out."

17. Shortly after the acquisition, Defendant began to require the older managers to move and unload heavy mattresses, post banners in high locations, and engage in other demanding physical labor, without assistance. The older managers were not required to perform these tasks prior to Defendant's acquisition of Bedtime. Moreover, Defendant provided a porter to at least one younger manager to perform these types of physical tasks. In addition, Defendant provided porters to assist managers in performing similar tasks in its stores in other states.

18. Shortly after the acquisition, Defendant intentionally reduced the Claimants' sales commission earnings by overstaffing the stores with younger "ambassadors" who were transferred to Las Vegas stores from stores in other states. The younger employees were paid through a combination of salary and commission and were guaranteed a minimum level of income, whereas the Store Managers were paid based on commissions. The overstaffing negatively impacted the commissions earned by the older managers and negatively impacted their overall earnings relative to the younger, non-management employees. Defendant's upper management actively encouraged this negative financial impact on older managers, instructing the District Manager to "fill them up with a bunch of salespeople around them, so they don't make a commission, so they don't make any money. Then they usually go off on their own."

19. Shortly after the acquisition, Defendant subjected older managers to inflated and unachievable sales goals and heightened scrutiny of their work.

20. Shortly after the acquisition, Defendant's district managers refused to

respond to phone calls from the Claimants. This practice negatively impacted sales because higher level approval was sometimes required to complete a sale.

21. Shortly after the acquisition, Defendant offered a week-long training course at its "Mattress Firm University" in Houston, Texas. Defendant did not permit older Las Vegas employees to attend the training, but permitted younger Las Vegas employees to attend the training. Defendant arranged for less comprehensive two-day training in Las Vegas for the older employees.

22. Defendant engaged in other practices designed to make the Claimants' working conditions more difficult and intended to force them to resign, such as providing insufficient computer training.

23. Defendant did not inform older employees of Area Manager vacancies or any other promotion opportunities. Defendant notified younger employees of these opportunities via email or through verbal invitations by management. Two employees over age 40 expressed interest in promotion to Store Manager positions, but Defendant filled the positions with younger, less experienced employees. One of these older employees was eventually placed in a Store Manager position in a low performing store.

24. Defendant did not permit Seisan to apply for an Area Manager position, even though he was ranked as first or second out of 25 Store Managers and expressed interest in the promotion. Instead, Defendant demoted Seisan to an Assistant Store Manager position.

25. Defendant demoted Schnair from a Store Manager position to an Assistant Store manager position and placed him under the supervision of his younger and less experienced assistant.

26. Defendant reassigned James to manage poorly performing stores while placing younger, less experienced managers in more highly performing stores.

27. Because of the intolerable working conditions described in paragraphs

15-26, Gray, Gillespie, McLean, Seisan and other older employees felt compelled to resign.

28.   When older employees resigned, Defendant replaced them through recruitment efforts targeted at college campuses and with the younger "ambassadors" who had relocated from stores in other states.

29.   Defendant discharged Schnair on June 29, 2007, after he took a lunch break to raise his glucose level as a result of his diabetes. Schnair posted a sign on the door that read, "Back in 5 minutes," to obtain his food. District Manager Zack Busby and Vice President Dave Brummett were visiting that day and disciplined Schnair for leaving the store unattended during business hours. Shortly afterwards, Defendant fired him for alleged insubordination and communicated a new policy to employees that they were not to close the store to obtain lunch. After communication of this new policy, younger workers continued to leave the store unattended for lunch or dinner without reprimand.

30.   The effect of the practices complained of in paragraphs 15-29 above has been to deprive the Claimants and others similarly-situated (age 40 or over) of equal employment opportunities and otherwise adversely affect their status as employees because of their age.

31.   The unlawful practices complained of in paragraphs 15-29 above were and are willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

### PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.   Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practices which discriminate on the basis of age.

1     B.    Order Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities for individuals 40 years of age or older, and which eradicate the effects of its past and present unlawful employment practices.

    C.    Grant a judgment requiring Defendant to pay appropriate back wages in an amount to be determined at trial, an equal sum as liquidated damages, and prejudgment interest to those individuals whose wages were and are being unlawfully withheld as a result of the acts complained above including but not limited to disparate treatment and constructive discharge.

    D.    Order Defendant to make whole all individuals adversely affected by the unlawful practices described above, by providing the affirmative relief necessary to eradicate the effects of its unlawful practices, including but not limited to the Claimants.

    E.    Grant such further relief as the Court deems necessary and proper in the public interest.

    F.    Award the Commission its costs of this action.

///
///
///

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

Dated: September 23, 2013

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION


P. DAVID LOPEZ,
   General Counsel

JAMES LEE,
Deputy General Counsel

GWENDOLYN YOUNG REAMS,
Associate General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, NE
Washington, DC 20507

By: _____
   Anna Y. Park,
   Regional Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION