**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

***

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>                    Plaintiff,<br>vs.<br><br>MATTRESS FIRM,<br><br>                    Defendant. | Case No. 2:13–cv–1745–GMN–VCF<br><br>**ORDER**<br><br>MOTION TO STRIKE DECLARATIONS (DOC. #94) |

This matter involves the United States Equal Employment Opportunity Commission's (hereafter "the EEOC") civil action against Defendant Mattress Firm. Before the court are Mattress Firm's Motion to Strike Declarations (Doc. #94), the EEOC's response (Doc. #103), and Mattress Firm's reply (Doc. #108). For the reasons stated below, Mattress Firm's motion to strike is granted in part and denied in part.

**I. Background**

The EEOC brought the instant action against Mattress Firm for alleged age discrimination between 2007 and 2011. The instant motion to strike arises from the EEOC's response to Mattress Firm's motion for summary judgment. In support of its response, the EEOC provided the declarations of former Mattress Firm employees as well as excerpts from their deposition transcripts. Mattress Firm now moves to strike portions of the former Mattress Firm employees' declarations on the grounds that the declarant-employee lacked personal knowledge or their statements are inadmissible hearsay.

**II. Legal Standard**

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." FED. R. CIV. P. 56(a). "The court shall

grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record, including depositions documents, electronically stored information, affidavits or declarations … or showing that the materials cited do not establish the absences or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. (c)(4).

"[P]ersonal knowledge and competence to testify [may be] reasonably inferred from [the declarants] positions and nature of their participation in the matter to which they swore." *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990).

""At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *see also Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001) (declaration based on inadmissible hearsay could not be considered when deciding motion for summary judgment).

### III. Discussion

The parties present one issue: whether declarations in supporting the EEOC's response to Mattress Firm's motion for summary judgment are based on personal knowledge and set forth facts that would be admissible in evidence.

1.  <u>Jackie Donahue's Declaration</u>

    i.  Paragraph 6: "Because the acquired Bedtime Mattress sales force was highly experienced sales people in the Las Vegas market, Mattress Firm acquired us to ensure that the stores would be adequately staffed and remain open for business during the transition period."

Donahue lacks personal knowledge about why Mattress Firm retained the Bedtime Mattress sales force. Donahue testified, at her deposition, that she was informed that she would continue to be employed by Mattress Firm and her job description would not change. (Doc. #88-23 at 16-17). Donahue, however, did not testify that she met with Bedtime Mattress' or Mattress Firm's management to discuss the reason Bedtime Mattress' sales force was being retained. It also cannot be reasonably inferred from Donahue's 25 years of mattress sales experience that she had personal knowledge of why Mattress Firm decided to retain the Bedtime Mattress sales force. Paragraph 6 of Donahue's declaration will be stricken.

    ii. Paragraph 12: "Moreover, when the weekly truck arrived to deliver new merchandise, the drivers told me that they were under strict orders to have me unload the truck by myself … The drivers also told me that if I refused to unload the trucks, they were supposed to report me to management so that I could be disciplined."

    Paragraph 13 (First Sentence): "I then asked the drivers if Michael Heissenberger, a much younger sales associate, was also required to unload trucks by himself and they said, 'No.'"

Paragraph 12 and the first sentence of paragraph 13 of Donahue's declaration are stricken as irrelevant. FED. R. EVID. 401. The EEOC asserts that paragraphs 12 and 13 of Donahue's declaration are being offered to show the effect of the unidentified truck driver's statements on Donahue's state of mind. Donahue testified that Mattress Firm required its employees to unload mattresses from trucks and

3

that she refused to do so. (Doc. #88-23 at 12). Donahue's state of mind when she refused to move the mattresses, however, is irrelevant; the relevant facts to which Donahue herself can testify are her belief that Mattress Firm required its employees to move mattresses and that she refused to do so.

   iii. Paragraph 13 (Second Sentence): "I called Mr. Heissenberger and asked him if he had to unload trucks and he responded, 'No.'"

The second sentence of paragraph 13 of Donahue's declaration is not hearsay. Donahue's conversation with Heissenberger shows that Heiseenberger heard her questions and responded to them, thus Donahue's question is being offered for a non-hearsay purpose. *United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991) (statements offered to prove the effect on the listener is not hearsay). Heissenberger's response to a question regarding his work duties is an admission by a party-opponent's employee. FED. R. EVID. 801(d)(2)(D) (statements "made by the party's agent or employee on a matter within the scope of that relationship and while it existed" is not hearsay).

   iv. Paragraph 20: "Younger workers like John (last name unknown), Keith (last name unknown), and April Lawrence were not required to hang banners, climb ladders, or rearrange the store."

Donahue has personal knowledge of the facts stated in Paragraph 20 of her declaration. It can be reasonably inferred from Donahue's position as a Mattress Firm sales associate, who occasionally worked with other Mattress Firm sales associates, that Donahue would have observed the tasks that were, or were not, performed by younger Mattress Firm employees.

   v. Paragraph 23: "During my employment with Mattress Firm, I was denied computer access to important pricing information for merchandise … All the younger transferred employees, like the assistant store managers had access to this crucial pricing information."

Donahue has personal knowledge of the facts stated in Paragraph 23 of her declaration.  It can be reasonably inferred from Donahue's position as a Mattress Firm sales associate, who occasionally worked with other Mattress Firm sales associates, that Donahue would have observed younger Mattress Firm employees accessing pricing information on company computers.

      vi.      Paragraph 24: "During my employment with Mattress Firm, district managers ignored my repeated phone calls seeking information and approval to perform my job.  However, district managers did no ignore the phone calls from the younger transferred employees."

Donahue has personal knowledge of the facts stated in Paragraph 24 of her declaration.  Donahue testified that she was repeatedly unable to reach district managers, but observed younger employees, who used their personal cell phones, speaking with district managers.  (Doc. #88-23 at 31).

      vii.      Paragraph 25: "The district managers treated the younger, newly transferred employees with more camaraderie, courtesy, and respect, while older sales associates were treated with disrespect and hostility."

Donahue has personal knowledge of the facts stated in Paragraph 25 of her declaration.  It can be reasonably inferred from Donahue's position as a Mattress Firm sales associate she would have observed the disparity in treatment between younger and older Mattress Firm employees.

      viii.      Paragraph 27: "I found the required heavy manual labor, hanging banners in the showroom, unfair treatment, and Mr. Busby's hostility towards me as intolerable working conditions."

Paragraph 27 of Donahue's declaration is not conclusory or speculative.  Donahue may testify regarding her personal feelings about her work environment.

/// /// ///

/// /// ///

5

2. <u>Joseph Gillespie's Declaration</u>

   i. Paragraph 13: "Mr. Fazio's representations led me to believe that I would maintain my position as Sales Manager, with the same terms and conditions of employment."

Paragraph 13 of Gillespie's declaration is not conclusory or speculative. Gillespie may testify regarding his personal beliefs and expectations prior to starting work for Mattress Firm.

   ii. Paragraph 20: "Mattress Firm kept me and the other acquired Bedtime Mattress employees on payroll because we possessed a wealth of sales experience in the Las Vegas sales market. Mattress Firm needed us to keep all the stores adequately staffed and open for business during the transition period."

Gillespie has personal knowledge of the facts stated in Paragraph 20 of his declaration. Gillespie was a Bedtime Mattress sales manager, reported directly to Bedtime Mattress' owner, and had meetings with Bedtime Mattress' and Mattress Firm's management prior to Mattress Firm's acquisition of Bedtime Mattress. Given Gillespie's position at Bedtime Mattress and his close contact with the management of both companies, it can be reasonably inferred that he had personal knowledge about why Mattress Firm wanted to retain Bedtime Mattress' sales force.

   iii. Paragraph 23: "Based on my forty years of experience in the mattress retail industry, overstaffing stores was a common practice among employers to force sales associates to quit by reducing their commissions and earnings."

Paragraph 23 of Gillespie's declaration is stricken as an improper lay opinion. "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: … not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701. The EEOC has not designated Gillespie as an expert witness (Doc. #103 at 8). Gillespie's opinion testimony must meet the requirements of Rule 701, which it fails to do. Gillespie's "forty years of

6

experience in the mattress retail industry" is the type of specialized knowledge that Rule 701 bars from lay opinions. As Gillespie may not give an expert or lay opinion, paragraph 23 of his declaration is stricken. Paragraph 23 of Gillespie's declaration will be stricken.

      iv.      Paragraph 24: "Mattress Firm's practice of unnecessarily overstaffing stores after the acquisition was intended to reduce their commissions and nudge the older workers out by forcing them to quit. Furthermore, once the transition process was complete and continuity of operations ensured, Mattress Firm would replace older employees like me with younger employees."

The statement "intended to reduce their commissions and nudge the older workers out by forcing them to quit" is stricken for lack of personal knowledge. Given Gillespie's position and experience on Mattress Firm's sales floor, it would be reasonably to infer that Gillespie had personal knowledge that his earnings dropped to overstaffing. It is also reasonable to infer that Gillespie would have witnessed the replacement of older employees who quit, with younger employees. Gillespie, however, cannot have personal knowledge about Mattress Firm's motivation for its alleged overstaffing; his statement regarding Mattress Firm's alleged scheme to "nudge" older workers out is speculation. The first sentence of Paragraph 24 of Gillespie's declaration will be stricken.

      v.      Paragraph 27: "During my employment at Mattress Firm, I met a newly transferred Mattress Firm sales associate named Johnathan Gallop. Mr. Gallop was in his twenties and told me that he was receiving a guaranteed wage from Mattress Firm. The older sales associates like me (over age forty) were not receiving a guaranteed wage."

Gillespie has personal knowledge of the facts stated in Paragraph 27 of his declaration. (Doc. #88-22 at 40). Gallop's statements are not hearsay. Gallop was a younger Mattress Firm employee who replaced Gillespie. Gallops statements about his salary are admissions by a party-opponent's employee.

FED. R. EVID. 801(d)(2)(D) (statements "made by the party's agent or employee on a matter within the scope of that relationship and while it existed" is not hearsay).

> vi. Paragraph 28: "During my employment with Mattress Firm, younger sales associates in their twenties would leave the store during work hours for long period of time, but never reprimanded."

The statement "but never reprimanded" is stricken for lack of personal knowledge. Gillespie testified that he saw younger employees "disappear for hours at a time," thus he has personal knowledge about the younger employee's absenteeism. Gillespie, however, only mentions that "others just looked the other way." It is not reasonable to infer that the tolerance of his Mattress Firm co-workers meant that the absent employees were never reprimanded. Gillespie's statement to the contrary is speculation as he was never informed that the absent employees were never punished. The words "but never reprimanded" will be stricken from Paragraph 28 of Gillespie's declaration will be stricken.

> vii. Paragraph 29: "During the Spring of 2007, Mattress Firm denied me and the older former Bedtime Mattress sales associates computer access to important pricing information for merchandise. This pricing information was essential for determining how much negotiating room we had in order to make a reasonable commission, if any, when selling a specific product. All younger employees that Mattress Firm transferred into the Las Vegas market in 2007 had computer access to this crucial pricing information."

Gillespie has personal knowledge of the facts stated in Paragraph 29 of his declaration. It can be reasonably inferred from Gillespie's position as a Mattress Firm sales associate, who occasionally worked with other Mattress Firm sales associates, that Gillespie would have observed younger Mattress Firm employees accessing pricing information on company computers. (Doc. #88-22 at 45).

      viii.    Paragraph 40: "Intolerable working conditions in the form of performing heavy manual labor in business attire and without assistance, the demotion and wage reduction, and other unfair treatment based on age, were intended to 'nudge out' the older employees like me because these unfair employment practices greatly hindered our ability to meet Mattress Firm's monthly sales goals, complete as many sales, and earn a livable wage."

The statement "intended to 'nudge out' the older employees like me" is stricken as speculation. Gillespie may testify about his own experiences and how he felt as a result of Mattress Firm's alleged mistreatment, however he may not speculate about Mattress Firm's alleged motivation to allegedly mistreat Gillespie. The words "intended to 'nudge out' older employees like me" will be stricken from Paragraph 40 of Gillespie's declaration will be stricken.

3.    <u>Faron Hansen's Declaration</u>

      i.    Paragraph 8: "The younger employees were transferred to Vegas from other areas and had guaranteed salaries."

Hansen has personal knowledge of the facts stated in Paragraph 8 of his declaration. Hansen testified that he spoke with younger employees who were transferred in to Las Vegas and those individuals stated they received guaranteed salaries. (Doc. #88-9 at 34).

      ii.    Paragraph 13: "I was treated differently than the younger associates. At one point during my employment with Mattress Firm, District Manager Adam Baker, who was my supervisor, reprimanded me for discounting a mattress. The next day the younger area manager discounted a mattress and to my knowledge was not reprimanded."

Hansen lacks personal knowledge of the incident described in Paragraph 13 of his declaration. Hansen testified about Baker's efforts to prevent Hansen from "hitting bonus too often," such as setting unrealistic bonus thresholds. (Doc. #88-9 at 41-42). "The general rule in the Ninth Circuit is that a

party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("if a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procure for screening out sham issues of fact."). It cannot be reasonably inferred from Hansen's deposition testimony that the incident regarding the discounted mattress occurred and the EEOC may not create a issue of fact through a declaration that is inconsistent with the declarant's deposition testimony. *See id.* Hansen may, however, give statements about feeling that he was treated differently than younger employees. Paragraph 13 of Hansen's declaration will be stricken.

       iii.      Paragraph 14: "In 2009, I was unfairly written up for money that was stolen from the store. However, my younger co-worker, who had also been present at the time the money was stolen was not written up."

The statement "[h]owever, my younger co-worker, who had also been present at the time the money was stolen was not written up" is stricken due to lack of personal knowledge. Hansen testified extensively about the 2009 incident where money disappeared from his Mattress Firm store. It is not reasonable, however, to infer from his testimony that Hansen knew about the consequences, if any, is younger co-worker suffered as a result of the incident. The second sentence in Paragraph 14 of Hansen's declaration will be stricken.

       iv.      Paragraph 15: "In 2011, I was unfairly written up and demoted because my store had an alleged improper inventory count, but to my knowledge younger workers in other stores were not written up even though their inventory counts were inaccurate as well."

The statement "but to my knowledge younger workers in other stores were not written up even though their inventory counts were inaccurate as well" is stricken due to lack of personal knowledge.

Hansen may testify about his own experiences regarding, but he may not speculate about other, younger employees in different stores. Indeed, Hansen's own statement "but to my knowledge" implies that he lacks personal knowledge about what happened to similarly situated younger employees. The second portion of Paragraph 15 of Hansen's declaration will be stricken.

    v.    Paragraph 22: "Ultimately, I was forced to resign on July 7, 2011 because I felt I was trapped and was not going to be promoted regardless of my performance and prior managerial experience. I also quit because of the aggressive over-scrutiny, being 'talked down to all the time,' unfair treatment, and the lower pay."

Paragraph 22 of Hansen's declaration is not conclusory or speculative. Hansen may testify regarding his personal beliefs about why he left he had to leave Mattress Firm.

4.    <u>Stuart Katz's Declaration</u>

    i.    Paragraph 10: "During 2007, Mattress Firm denied me and the former Bedtime Mattress sales people access to important pricing information for merchandise … All of the younger transferred employees that Mattress Firm brought in to the Las Vegas market in 2007 had access to this crucial pricing information."

Katz has personal knowledge of the facts stated in Paragraph 10 of his declaration. It can be reasonably inferred from Katz's position at Mattress Firm, who occasionally worked with other Mattress Firm sales associates, that Katz would have observed younger Mattress Firm employees accessing pricing information on company computers.

    ii.    Paragraph 11: "I possessed much more sales experience than Mr. Heissenberger at the time he was promoted."

Katz lacks personal knowledge about the facts stated in Paragraph 11 of his declaration. Katz does not testify that he knew Mr. Heissenberger nor does the nature of his position, as a sales associate

11

at a less desirable Mattress Firm location, allow for a reasonable inference that Katz knew about Mr. Heissenberger's qualifications.  Paragraph 11 of Katz's declaration will be stricken.

      iii.      Paragraph 12: "Former Bedtime Mattress sales person Faron Hansen applied for a promotion to an area manager, but was denied."

Katz has personal knowledge about the facts stated in Paragraph 12 of his declaration.  Katz testified that he was close with Faron Hansen.  (Doc. #88-25 at 15).  It is thus reasonable to infer that Katz was familiar with Hansen's efforts to become an area manager.

      iv.      Paragraph 16: "I was initially interested in applying for a promotion to an area manager position, but lost interest around 2009 to 2010 after learning that Mattress Firm only promoted much younger sales associates to area manager for the Las Vegas market.  I felt that applying for a promotion in the Las Vegas market was a 'lost cause.'"

Katz has personal knowledge about the facts stated in Paragraph 16 of his declaration.  Katz testified that he "wasn't going to go anywhere" in Mattress Firm due to the company's alleged policy of favoring younger employees.  It is reasonable to infer from Katz's position that he had personal knowledge about Mattress Firm's promotion practices and why he did not apply for a promotion.

5.     <u>Lucia MacLean's Declaration</u>

      i.      Paragraph 5: "On or about late July/August of 2007, Frank MacLean was forced to quit his employment with Mattress Firm because he could no longer tolerate the heavy manual labor/lifting requirements and unfair treatment."

MacLean has personal knowledge about the facts stated in Paragraph 5 of her declaration.  It is reasonable to infer that MacLean acquired personal knowledge of these facts when her husband, deceased Mattress Firm employee Frank MacLean, told her about his experience with the company.

Although MacLean's declaration raises potential hearsay concerns, which Mattress Firm has not raised, it cannot be said that MacLean lacks personal knowledge about the above listed facts.

6. <u>Hooshang Seisan's Declaration</u>

    i. Paragraph 4: "Soon after Mattress Firm took over, I began to experience mistreatment on the basis of my age.  This mistreatment included, but was not limited to, being called 'old timer.'"

Seisan has personal knowledge about the facts stated in Paragraph 4 of his declaration.  Seisan testified that he, and other older employees, were called "old timers" and that Mattress Firm employee Chris Brown used abusive language towards Seisan.  (Doc. #88-2 at 43).

    ii. Paragraph 5: "April Lawrence told me that she wanted to be a store manager and was promised she would [be] promoted to store manager when she took the position with Mattress Firm."

April Lawrence's statements are admissible as non-hearsay.  April Lawrence is an employee of Mattress Firm, thus any statements she made while employed by Mattress Firm about her prospects of being promoted are not hearsay. FED. R. EVID. 801(d)(2)(D) (statements "made  by the party's agent or employee on a matter within the scope of that relationship and while it existed" is not hearsay).

    iii. Paragraph 9: "I felt compelled to resign because I was subjected to undeserved treatment in an effort to force me to resign.  I felt I had no choice but to resign."

Paragraph 9 of Seisan's declaration is not conclusory or speculative.  Seisan may testify regarding his personal beliefs about why he left he had to leave Mattress Firm.

/// /// ///

/// /// ///

/// /// ///

13

7. <u>Kathy Thanos' Declaration</u>

    i.    Paragraph 25: "The younger salespeople were not required to assist me in cleaning the store, carry/move mattresses, or do any of the work other than selling mattresses for commission."

    Paragraph 27: Thanos "believe[s] that she was treated less favorably than younger employees and subjected to age discrimination based on [a list of factors]."

    Paragraph 34: "I was subjected to unfair disciplinary actions while younger employees were not disciplined for the same behavior, and less experienced, younger employees were promoted over me."

Thanos' has personal knowledge of the facts stated in Paragraph 25, 27, and 34 of her declaration. It can be reasonably inferred from Thanos' position with Mattress Firm she would have observed the disparity in treatment between younger and older Mattress Firm employees.

    ii.    Paragraph 36: "As a result of Mattress Firm's treatment, I was humiliated and disrespected by being treated worse than the much younger less experienced employees."

Paragraph 36 of Thanos' declaration is not conclusory or speculative. Thanos may testify regarding her personal beliefs about her time at Mattress Firm.

ACCORDINGLY, and for good cause shown,

IT IS HEREBY ORDERED that Mattress Firm's motion to strike (Doc. #94) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that paragraphs 6 and 12 of Jackie Donahue's declaration are stricken. The first sentence of paragraph 13 of Jackie Donahue's declaration is also stricken.

IT IS FURTHER ORDERED that paragraph 23 of Joseph Gillespie's declaration is stricken. The above reference portions of paragraphs 24, 28, and 40 of Joseph Gillespie's declaration are also stricken.

IT IS FURTHER ORDERED that paragraph 13 of Faron Hansen's declaration is stricken. The first sentence of paragraph 14 of Faron Hansen's declaration is stricken. The above referenced portion of paragraph 15 of Faron Hansen's declaration is also stricken.

IT IS FURTHER ORDERED that paragraphs 11 of Stuart Katz's declaration is stricken.

IT IS SO ORDERED.

DATED this 15th day of March, 2016.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE